UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

CARLOS M. HERRERA, On Behalf of Himself  :
And All Others Similarly Situated,          :
                                            :
                    Plaintiff,              :
          vs.                               :
                                            :
WYETH, WYETH SAVINGS PLAN                   :
COMMITTEE, WYETH SAVINGS PLAN-             :     Case No. 1:08-cv-04688 (RJS)
PUERTO RICO COMMITTEE, WYETH               :
RETIREMENT COMMITTEE, ROBERT ESSNER, :
BERNARD POUSSOT, PAUL J. JONES,            :
KENNETH J. MARTIN, RENÉ R. LEWIN,          :
LAWRENCE STEIN, MARY KATHERINE             :
WOLD, KAREN L. LING and UNKNOWN            :
FIDUCIARY DEFENDANTS 1-30,                  :
                                            :
                    Defendants.             :

-----------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT; CONDITIONAL CERTIFICATION
OF CLASS FOR SETTLEMENT; APPROVAL OF NOTICE PLAN; AND TO SET
FAIRNESS HEARING TO APPROVE SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................... 2

    A. The Proposed Settlement Agreement ..................................... 5

III. DISCUSSION ................................................................... 6

    A. The Court Should Approve The Proposed Notice Plan And The Claims Procedure................................ 6

        1. Description of the Notice Plan ................................. 6

        2. The Proposed Notice Plan and Claims Procedures Meet the Requirements of Due Process .................................... 7

    B. The Settlement Meets The Standards For Preliminary Approval Under Rule 23 ................................................................ 8

    C. This Settlement Is The Product Of A Rigorous And Adversarial Process .................................................................... 9

    D. The Proposed Settlement Satisfies The Factors Considered By The Courts In The Second Circuit When Reviewing Proposed Class Action Settlements ........................................................ 10

        1. Factor One: The Complexity, Expense and Likely Duration of Litigation ........................................................ 11

        2. Factor Two: The Reaction of the Class to the Settlement ..... 12

        3. Factor Three: The Stage of the Proceedings and the Extent of Discovery ...................................................... 12

        4. Factor Four: The Risks of Establishing Liability .............. 13

        5. Factor Five: The Risk of Establishing Damages ............... 13

        6. Factor Six: The Risks of Maintaining The Class Action Through Trial ..................................................... 14

        7. Factors Eight and Nine: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation ................................... 15

IV.   THE COURT SHOULD CONDITIONALLY CERTIFY
      THE CLASS FOR SETTLEMENT PURPOSES ............................... 16

      A.    The Action Satisfies Rule 23 ................................................ 16

            1.    Rule 23(a)(1) – "Numerosity" ..................................... 18

            2.    Rule 23(a)(2) – "Commonality" ................................. 18

            3.    Rule 23(a)(3) – "Typicality" ...................................... 19

            4.    Rule 23(a)(4) – Adequacy of Representation ................... 20

            5.    The Class May Be Properly Certified Under Rule 23(b)(1) .. 21

                  (a)    Subsection 23(b)(1)(B) ................................... 22

                  (b)    Subsection Rule 23(b)(1)(A) ............................. 23

                  (c)    Rule 23(g) is Satisfied ................................... 24

V.    CONCLUSION ................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Amchem. Prods. v. Windsor,*
   521 U.S. 591 (1997) ...................................................................................   16

*Aramburu v. Healthcare Fin. Services, Inc.,*
   No. 02-CV-6535 (MDG), 2009 WL 1086938 (E.D.N.Y. April 22, 2009)..................   12

*Babcock v. Computer Assocs. Int'l, Inc.,*
   212 F.R.D. 126 (E.D.N.Y. 2003) ...................................................................   20

*Banyai v. Mazur,*
   205 F.R.D. 160 (S.D.N.Y. 2002) ..................................................................   19

*Benner v. Becton Dickinson & Co.,*
   214 F.R.D. 157 (S.D.N.Y. 2003)...................................................................   17

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975) ..................................................................................   14

*Caridad v. Metro-North Commuter R.R.,*
   191 F.3d 283 (2d Cir. 1999) ........................................................................   17

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ........................................................................   1, 9, 10
                                                                                                        13, 15

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ..........................................................................   18

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ..........................................................................   9

*Donovan v. Bierwirth,*
   754 F.2d 1049 (2d Cir. 1985) ......................................................................   14

*Gearren v. McGraw-Hill Cos.,*
   No. 10-792-cv ..........................................................................................   3, 4

*Greeley v. KLM Royal Dutch Airlines,*
   85 F.R.D. 697 (S.D.N.Y. 1980) ...................................................................   21

*Hicks v. Morgan Stanley & Co.,* No. 01-10071, 2005 WL 2757792, at *5 (S.D.N.Y.
Oct. 24, 2005) ..............................................................................................   10

*In re Ikon Office Solutions,* Inc.,

191 F.R.D. 457 (E.D. Pa. March 13, 2000) ............................................... 14

*In re: Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. (1984) ...................................................... 15

*In re AOL Time Warner ERISA Litig.*,
No. 02-8853, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ............................ 9

*In re Citigroup ERISA Litig.*,
No. 09-3804-cv ........................................................................ 3, 4

*In re Diet Drugs*,
No. 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ........................... 14

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992) ............................................................ 20

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005) ................................................... 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
228 F.R.D. 541 (S.D. Tex. 2005) ....................................................... 16

*In re Global Crossing Secs. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................... *passim*

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ..................................................... 20, 21

*In re Milken & Associates Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) ......................................................... 15

*In re Nigeria Charter Flights Contract Litig.*,
233 F.R.D. 297, 303 (E.D.N.Y. 2006) ................................................... 23

*In re Oxford Health Plans, Inc., Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................... 19

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................... 15

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y 2006) ...................................................... 17, 19, 21, 22

*In re Priceline.com, Inc. Sec. Litig.*,
No. 00-1884, 2007 WL 2115592 (D. Conn. July 20, 2007) ............................. 10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................. 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) ........................................................... 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ...................................................................... 17

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .................... 8, 9,
   11

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02 Civ.4816 DLC, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004) ....... 19, 20,
   23

*In re WorldCom, Inc. ERISA Litig.*,
   219 F.R.D. 267 (S.D.N.Y. October 24, 2003) .......................................... 18

*Int'l Union of Elec., Salaried, Mach., & Furniture Workers v. Unisys Corp.*,
   858 F. Supp. 1243, 1265 (E.D.N.Y. 1994) .............................................. 10

*Koch v. Dwyer*,
   No. 98 Civ. 5519(RPP), 2001 WL 289972 (S.D.N.Y. March 23, 2001) .... 19

*Kolar v. Rite Aid Corp.*,
   No. 01-CV-1229, 2003 WL 1257272 (E.D. Pa. Mar.11, 2003) ............... 22

*La Rue v. DeWolff Boberg & Assocs., Inc.*,
   128 S. Ct. 1020 (2008) .............................................................................. 14

*Marisol A. ex rel. Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ...................................................................... 18

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................... 8

*Robertson v. National Basketball Ass'n*,
   389 F. Supp. 867 (S.D.N.Y. 1975) ........................................................... 21

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ...................................................................... 18, 19,
   20

*Rueckert v. Sheet Metal Workers' Int'l Ass'n*,
   77 F.R.D. 409 (S.D.N.Y. 1977) ................................................................ 21

*Smith v. Aon*,
    238 F.R.D. 609 (N.D. Ill. 2006) ......................................................... 20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................... 12

*Teachers' Retirement Sys. of Louisiana v. A.C.L.N.*, Ltd.,
    No. 01-CV-11814, 2004 WL 304018 (S.D.N.Y. Feb. 18, 2004) .......................... 8

*Von Moore v. Simpsons*,
    No. 96-CV-2971, 1997 WL 570769 (N.D. Ill. Sept. 10, 1997) .......................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ......................................................... 8, 10

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ......................................................... 11, 16

## Federal Rules

Rule 23........................................................................ 16, 17

Rule 23(a) ................................................................... 17

Rule 23(a)(1) ................................................................ 18

Rule 23(a)(2) ................................................................ 18, 19

Rule 23(a)(3) ................................................................ 19

Rule 23(a)(4) ................................................................ 20, 21

Rule 23(b) ................................................................... 17

Rule 23(b)(1) ................................................................ 17, 21

Rule 23(b)(1)(A) ............................................................. 21, 22, 23

Rule 23(b)(1)(B) ............................................................. 22

Rule 23(e) ................................................................... 7, 8

Rule 23(g) ................................................................... 23

## I.    **INTRODUCTION**

Plaintiff Carlos M. Herrera respectfully submits this Memorandum of Law in support of his unopposed motion for preliminary approval of the proposed settlement of this ERISA[1] class action[2] (the "Settlement").  Plaintiff brought this case on behalf of a putative class of participants in and beneficiaries of the Wyeth Savings Plan, the Wyeth Union Savings Plan, and the Wyeth Savings Plan — Puerto Rico (the "Plans") against Defendants[3], who Plaintiff alleged were the fiduciaries of the Plans.  As set forth below, this Court dismissed Plaintiff's claims and Plaintiff had appealed that dismissal when the parties were able to reach a proposed settlement as a result of the court-ordered Civil Appeal Management Program ("CAMP") in the Court of Appeals.  Plaintiff is pleased to present a proposed settlement consisting of a cash payment of $2,000,000, which will provide substantial benefits to members of the Settlement Class and resolve all claims asserted by Plaintiff in this action.

This Settlement is an excellent result in light of the factual and legal risks to the Class of continued litigation, especially because this Court had already dismissed Plaintiff's claims and because Plaintiff faced substantial risk appealing this Court's orders.  As set forth below, the Settlement satisfies the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).  The Parties reached the proposed Settlement only after vigorous motion practice

---

[1]    "ERISA" refers to the Employee Retirement Income Security Act of 1974.

[2]    On December 21, 2012 Plaintiff filed the Stipulation of Settlement (the "Settlement Agreement," "Settlement" or "Agreement").  The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.  Thus, all capitalized terms not otherwise defined in this memorandum shall have the same meaning as ascribed to them in the Settlement Agreement.

[3]    Defendants are Wyeth LLC, Wyeth Savings Plan Committee, Wyeth Savings Plan – Puerto Rico Committee, Wyeth Retirement Committee, Robert Essner, Bernard Poussot, Paul J. Jones, Kenneth J. Martin, René R. Lewin, Lawrence Stein, Mary Katherine Wold, and Karen L. Ling.

1

that fully explored the critical issues in the case and after arm's-length negotiations during the CAMP mediation. This process and the lengthy negotiations between experienced counsel ultimately resulted in the proposed settlement.

At the final Fairness Hearing, the Court will have before it more detailed motion papers in support of the proposed Settlement and will be asked to determine whether the Settlement is fair, reasonable and adequate.  But first, Plaintiff requests that the Court preliminarily approve the proposed Settlement so that Plaintiffs may notify the Class members about the proposed settlement.  As set forth in the Proposed Order, Plaintiff respectfully requests that the Court (1) preliminarily approve the Settlement; (2) preliminarily certify a Settlement Class; (3) direct notice to the members of the Settlement Class; and (4) schedule a hearing to consider whether to grant final judicial approval of the Settlement.

Plaintiff respectfully requests that the Court establish a schedule that will lead to a final approval hearing during the week of April 8, 2013 or thereafter.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought his claims[4] pursuant to ERISA § 502, 29 U.S.C. § 1132, on behalf of himself and participants in the Plans during the Class Period,[5] whose accounts included investments in Wyeth Stock.  Plaintiff alleged that Defendants were the fiduciaries of the Plans who breached their ERISA-mandated duties by imprudently offering Wyeth Stock as a retirement investment when Defendants and others at Wyeth knew or should have known, based on internal testing, that Pristiq, a drug which was expected to be a major success, was unlikely to

---

[4]      Plaintiff originally filed the case in the District of New Jersey (Case No. 08 Civ. 1066) on February 27, 2008.  As result of a joint motion, the case was transferred to this Court in May, 2008.  (Docket Entry No. 1).  Plaintiff filed his Amended Complaint on September 29, 2008.

[5]      The Class Period is defined as "the period from January 31, 2006 through September 29, 2008" Complaint ¶ 1.

receive FDA approval for the treatment of menopause-related vasomotor symptoms ("VMS") and that Defendants failed to disclose material safety data.  Plaintiff alleged that Defendants knew or should have known that it was imprudent for the Plans to offer or invest in Wyeth Stock during the Class Period and that Defendants acted imprudently by not preventing further investment in Wyeth Stock and not liquidating those holdings.

On March 17, 2010, the Court entered an order dismissing the Amended Complaint.  In dismissing the Amended Complaint, the Court concluded that the Plans' governing documents reflect a clear intent to offer Wyeth stock as an investment option, and therefore, Defendants were entitled to a presumption that they acted prudently.  The Court further concluded that Plaintiffs did not allege facts that could overcome that presumption and determined that the 21 percent decline in Wyeth's stock price during the Class Period was not significant enough to show that Defendants acted imprudently.  The Court dismissed all of Plaintiff's claims.

Plaintiff subsequently moved for permission to amend his claims by adding further factual support but on August 23, 2010 the Court denied Plaintiff's motion, holding that none of the new allegations rebutted the presumption of prudence or showed that Defendants were required to remove Wyeth Stock from the Plans' investment options.  On August 30, 2010, the Court then entered judgment for Defendants and deemed the case to have been dismissed with prejudice through the March 17, 2010 Order.

Plaintiff appealed both rulings but withdrew his appeal without prejudice on November 1, 2010 with the ability to reinstate it after the Court of Appeals ruled on two important ERISA cases that were pending when Plaintiff filed his appeal and that involved similar claims pursuant to ERISA (*In re Citigroup ERISA Litigation*, No. 09-3804-cv, and *Gearren v. McGraw-Hill Cos.*, No. 10-792-cv).  On October 19, 2011, the Court of Appeals decided the *Citigroup* and

3

*McGraw-Hill* cases and held that plan fiduciaries are presumed to have acted prudently in continuing to offer company stock to plan participants in certain retirement plans, like the Plans at issue here, unless plaintiffs can show that the fiduciaries knew or should have known that the company was facing a "dire situation."

After the Second Circuit denied the petitions for rehearing in *Citigroup* and *McGraw-Hill*, Plaintiff reinstated his appeal on March 9, 2012. One month later, on April 9, 2012, the Parties participated in the Second Circuit's Civil Appeal Management Program ("CAMP"), a court-ordered mediation process. A representative of the Second Circuit's mediation program supervised the Parties' settlement negotiations and fully discussed the effect of the *Citigroup* and *McGraw-Hill* decisions on Plaintiff's claims. Throughout this process, the parties fully addressed the strengths and weaknesses of the case, as well as Defendants' defenses to each of the claims, and they explored the implications of the *Citigroup* and *McGraw-Hill* decisions for the parties. As a result of this process, the Parties agreed to resolve the Litigation, and on April 25, 2012, they signed a Memorandum of Understanding setting forth the framework for this proposed Settlement. On May 15, 2012, the Parties also filed a stipulation to dismiss Plaintiff's appeal pending this Court's approval of the Settlement, which was entered by the Second Circuit on May 18, 2012. The Parties thereafter gathered the Plan data from several record-keepers that would be necessary to review in order to make any distribution of the proposed settlement and negotiated the formal Settlement Agreement and supporting papers.

Plaintiff is now presenting the proposed settlement to the Court for preliminary approval along with a request that the Court establish a schedule leading to a fairness hearing during the week of April 8, 2013 or thereafter.

A.     **The Proposed Settlement Agreement**

Plaintiff and Defendants have proposed to settle all claims against Defendants for the sum of $2,000,000 (two million dollars), which amount will be deposited into an escrow account maintained by Plaintiff's Counsel within ten (10) business days after entry of the Preliminary Approval Order. This amount is the "Settlement Fund," and which, less Court approved attorneys' fees, expenses and case contribution awards to Plaintiff's Counsel and Named Plaintiff, shall be for the benefit of the Plan's participants and beneficiaries. Settlement Agreement ¶ 13.

In exchange for the Settlement Fund, Plaintiff has agreed to release Plaintiff's and the Class's claims against Defendants. The details of the release are set forth in ¶¶ 8-11 of the Settlement Agreement.

The Proposed Plan of Allocation, which is being submitted to the Court for approval, provides a proposed way to allocate the Settlement Fund net of the disbursements called for in the Settlement Agreement, ¶¶ 16-20 ("Net Settlement Fund"), and generally allocates the net proceeds to Class Members on a *pro rata* basis. The parties negotiated and drafted the Proposed Plan of Allocation based upon similar plans in other ERISA cases.

In the proposed Preliminary Approval Order, Plaintiff and Defendants have agreed upon a suggested schedule that — if approved by the Court — would set dates for certain events leading to a Fairness Hearing during which the Court would consider whether to finally approve the proposed settlement. In this regard, the parties have consented to the following generalized schedule of events if the Court preliminarily approves the Settlement Agreement:

| Event | Time for Compliance |
|---|---|
| Fairness Hearing | Approximately 100 days after entry of the Preliminary Approval Order. |

| Event | Time for Compliance |
|---|---|
| Deadline for e-mailing and mailing of Individual Notice to members of the Settlement Class. ("Class Notice"). | No later than 90 days before the Fairness Hearing. |
| Deadline for publishing Class Notice on each website identified in the Class notice. | No later than 90 days before the Fairness Hearing. |
| Deadline for filing memoranda in support of proposed Settlement and related relief, including request for attorneys' fees, expenses and Case Contribution Awards | 30 days before the Fairness Hearing. |
| Deadline for filing of Objections. | No later than 14 calendar days prior to the Fairness Hearing. |

As noted above, at least thirty days prior to the Fairness Hearing, Class Counsel will file a Motion in Support of Final Approval of Settlement, Counsel Fees and Reimbursement of Expenses, and for a Case Contribution Award to Named Plaintiff.  As part of this filing, Class Counsel will submit a declaration certifying that it has distributed the Notice in full compliance with the Order.  Many of the events set forth above are tied to the Fairness Hearing Date, which the Parties respectfully request be scheduled for an available date during the week of April 8, 2013 or thereafter.

### III.   DISCUSSION

**A.    The Court Should Approve The Proposed Notice Plan And The Claims Procedure**

**1.    Description of the Notice Plan**

The proposed Notice Plan will fully inform Settlement Class Members about the lawsuit, the proposed Settlement, and the facts that they need in order to make informed decisions about their rights.  The Notice Plan includes multiple components designed to reach the largest number

of Class Members possible. No later than ninety (90) days prior to the date of the Fairness

Hearing, Class Notice will be e-mailed to members of the Settlement Class for whom current e-

mail addresses are readily available and will otherwise be sent to members of the Settlement

Class at the mailing addresses maintained by the Plans' record-keeper. Additionally, by that

same date, Plaintiff will post the Class Notice on a dedicated Settlement website established by

Plaintiff's Counsel. The variations of these methods of noticing the Class will help ensure the

dissemination of adequate and reasonable notice and information consistent with standards

employed in notification programs designed to reach unidentified members of settlement groups

or classes.

The proposed Class Notice provides detailed information about the proposed Settlement,

including a comprehensive summary of its terms, litigation costs and case contribution awards,

and the terms of the releases of claims. The Class Notice will also be published on the dedicated

Settlement website which provides valid, due and sufficient notice of these proceedings and of

the matters set forth therein, including the procedures for the making of objections. The Class

Notice also provides information about the Fairness Hearing date, settlement Class Members'

rights to object (and deadlines and procedures for objecting), and the procedure to obtain

additional information, including the contact information for Plaintiff's Class Counsel.

### 2.    The Proposed Notice Plan and Claims Procedures Meet the Requirements of Due Process

Once a court preliminarily approves a proposed settlement, notice of the proposed

settlement and the fairness hearing must be provided to class members. *See* FED. R. CIV. P.

23(e)(1)-(2). The notice contemplated by Rule 23(e) must satisfy the requirements of due

process.

In order to satisfy due process considerations, notice to Class Members must be

"reasonably calculated under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Courts in this District have determined

that a directed mailing to class members' last known address provides sufficient notice and

opportunity for class members to consider the proposed order.  *See Teachers' Retirement Sys. of*

*Louisiana v. A.C.L.N.*, Ltd., No. 01-CV-11814, 2004 WL 304018, at *2 (S.D.N.Y. Feb. 18,

2004).  Here, Plaintiff's proposed means of class notice exceeds those standards.  Plaintiff

believes that e-mailing, a direct mailing, and an Internet website presence will result in a very

high percentage of actual notice received by affected participants and beneficiaries, ensuring that

the proposed Notices and Notice Plan meet the mandates of due process and the requirements of

Rule 23(e).

**B.      The Settlement Meets The Standards For Preliminary Approval Under Rule 23**

As discussed above, FED. R. CIV. P. 23(e) requires court approval of class action

settlements, the issuance of notice in a reasonable manner to class members who would be bound

by the settlement, and a finding by the court following a hearing that the settlement is reached

through arm's-length negotiations and is fair, reasonable and adequate.

Courts have a strong policy in favor of settling class actions because settlement saves

time and expense and enables the parties to resolve disputes on their own timetable and terms.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of

the strong judicial policy in favor of settlements, particularly in the class action context.")

(citation and internal quotes omitted); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004

WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) ("public policy favors settlement, especially in the

case of class actions").

8

Although the Court should not "rubber stamp" a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case," *Grinnell*, 495 F.2d at 462, in applying the standards to evaluate procedural and substantive fairness discussed below.

**C.    This Settlement Is The Product Of A Rigorous And Adversarial Process**

In considering the fairness of a settlement, a district court must first examine "the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). "A court must ensure that the settlement resulted from 'arm's-length negotiations' and that plaintiff's counsel engaged in the discovery 'necessary to effect representation of the class's interest.'" *WorldCom*, 2004 WL 2338151, at *5 (quoting *D'Amato*, 236 F.3d at 85).

Courts have noted that intensive pre-negotiation discovery and motion practice—as well as the presence of a mediator—demonstrate the absence of fraud or collusion. *In re AOL Time Warner ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at * 5 (S.D.N.Y. Sept. 27, 2006) (citing *D'Amato*, 236 F.3d at 85 and *In re Global Crossing Secs. and ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (internal citations and quotations omitted)).

This Settlement Agreement satisfies all indicators of a fair and arm's-length negotiation. Defendants have contested Plaintiff's efforts at every turn during the litigation in this Court and in the Court of Appeals. The Settlement was the product of spirited negotiations between experienced counsel for the parties as well as a contentious, full-day CAMP mediation that carried into additional negotiations in subsequent days. As a result of this lengthy process, the parties agreed to the proposed settlement that Plaintiff's Counsel believe is the best possible settlement that could be achieved at this stage of the litigation. Under the circumstances, the

Settlement is entitled to a presumption of fairness. *See Global Crossing*, 225 F.R.D. at 461.

**D.     The Proposed Settlement Satisfies The Factors Considered By The Courts In The Second Circuit When Reviewing Proposed Class Action Settlements**

The Second Circuit has identified nine factors that courts should consider in deciding whether a proposed class action settlement is fair, reasonable and adequate:

(1)     the complexity, expense and likely duration of the litigation;

(2)     the reaction of the class to the settlement;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability;

(5)     the risks of establishing damages;

(6)     the risks of maintaining the class action through the trial;

(7)     the ability of the defendants to withstand a greater judgment;

(8)     the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)     the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted); *see also Wal-Mart*, 396 F.3d at 117; *In re Priceline.com, Inc. Sec. Litig.*, No. 00-1884, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007). Although complete analysis of these factors is required prior to final approval of a settlement,[6] at

---

[6]     Upon consideration for final approval of a settlement, the Court need not find each factor fully satisfied; rather the "the court 'consider[s] the totality of these factors in light of the particular circumstances.'" *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) (citing *Global Crossing*, 225 F.R.D. at 456, internal quotations omitted). Similarly, the court need not apply any "single, inflexible test." *Int'l Union of Elec., Salaried, Mach., & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1265 (E.D.N.Y. 1994) (citation omitted). Finally, in applying the *Grinnell* factors, a court should not substitute its judgment for that of the parties who litigated the case and negotiated the settlement. *Id.* at

the preliminary approval stage, "the Court need only find that the proposed settlement fits 'within the range of possible approval.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citation omitted).  For the reasons set forth below, the Settlement satisfies all of the *Grinnell* factors (except that at this preliminary approval stage the Parties and the Court cannot yet assess the Class's reaction because the Class members have not yet had the opportunity to comment on it).

    **1.**    **Factor One: The Complexity, Expense and Likely Duration of Litigation**

Many courts have recognized the complexity of ERISA breach of fiduciary duty company stock claims, such as those asserted here.  *See, e.g., WorldCom*, 2004 WL 2338151 at *6 (approving settlement); *Global Crossing*, 225 F.R.D. at 456.

This case was similarly broad in scope and complexity.  Plaintiff's claims raise numerous complex questions of law and fact that would require extensive discovery and testimony as well as expert testimony.  Additionally, this case would involve tremendously costly and time-consuming fact and expert discovery.  This proposed Settlement eliminates the need for an appeal and the additional months of contested discovery as well as the substantial time and expense of the accompanying litigation.  Absent settlement, and assuming that the Second Circuit granted Plaintiff's appeal, the Parties would continue a long and costly litigation process, with class certification, further merits discovery, motions for summary judgment, trial and further appeals all ahead of them.  This settlement precludes the need for all of that complicated litigation and conserves judicial resources.

Moreover, even if Plaintiff succeeded on appeal and then at trial, the additional delay

---

1266. The purpose of settlement is to avoid a judicial resolution of contested matters, relieving a need for extensive trial on the merits of the case. *Weinberger*, 698 F.2d at 74.

through trial, post-trial motions, and the appellate process could deny the Class any actual recovery for years, thereby further reducing the value of such a judgment. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation ... the passage of time would introduce yet more risks ... and would in light of the time value of money, make future recoveries less valuable than this current recovery.").

The complexity, expense and duration of this litigation weigh heavily in favor of approving the Settlement.

### 2. Factor Two: The Reaction of the Class to the Settlement

Plaintiff supports the proposed settlement but the other Class members have not yet commented on the proposed settlement because they have not yet received Notice about it. In the event any objections are received after notice is issued, Plaintiff's Counsel will address them in connection with the final approval process.

### 3. Factor Three: The Stage of the Proceedings and the Extent of Discovery

In this case, Plaintiff has developed a comprehensive understanding of the factual and legal issues involved in the case and has a thorough understanding of the merits of this case from the significant amount of information that Plaintiff's Counsel has developed to support his claims here. As a result, the Parties have "a clear view of the strengths and weaknesses of their cases." *Aramburu v. Healthcare Fin. Services, Inc.*, No. 02-CV-6535 (MDG), 2009 WL 1086938, at *4 (E.D.N.Y. April 22, 2009). Plaintiff is also well-aware of the range of possible outcomes on appeal and at trial. Accordingly, the stage of the litigation and the amount of discovery completed weigh in favor of the Settlement. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (approving settlement despite little or no formal discovery when

class counsel interviewed former employees, reviewed documents and deposition summaries from an SEC investigation, hired forensic accountants to review the financial errors, and retained experts to analyze damages).

### 4.    Factor Four: The Risks of Establishing Liability

In assessing a proposed settlement, the Court should balance the benefits it provides to the class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.  The types of ERISA claims asserted by Plaintiff here have been described as implicating "a rapidly developing, and somewhat esoteric, area of law." *Global Crossing,* 225 F.R.D. at 459 n.13 (finding that the plaintiffs' significant legal and factual obstacles to proving their case, when viewed against the substantial and certain benefits of settlement, supported settlement approval).

Although Plaintiff was optimistic regarding the likelihood of success on the merits, Plaintiff recognizes that recovery was far from guaranteed and that this case is accompanied by risk at every stage of the litigation, including the risks posed by the appeal (especially after the decisions in *Citigroup* and *McGraw Hill*), summary judgment, trial, post-trial motions, further appeals and even a petition for a writ of *certiorari*, and the risks inherent in the delays that those proceedings would cause.

While Plaintiff's Counsel are confident in their ability to prove Plaintiff's claims, they support and recommend this proposed Settlement because of the serious risks to Plaintiff and the Class of losing the case on appeal or on a pre-trial motion or at trial.  The immediate benefits and certainty of the Settlement favor settling instead of pursuing the litigation.

### 5.    Factor Five: The Risk of Establishing Damages

Damages in an ERISA case are governed by the Second Circuit's influential opinion in

*Donovan v. Bierwirth*, which elaborated the rule that ERISA requires breaching fiduciaries to make good to the plan the difference between the returns of prudent investment alternatives and the challenged imprudent investment. *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).[7] The risk associated with proving damages in an ERISA case resides primarily in the complexity of the calculation. Defendants have already challenged Plaintiff's calculation of damages during negotiations and the CAMP mediation, taking the position that Plaintiff cannot establish imprudence or damages during the Class Period. Thus, the risk of establishing damages weighs in favor of a sum-certain settlement.

6.     **Factor Six: The Risks of Maintaining The Class Action Through Trial**

Because class certification can be reviewed and modified at any time before trial, Plaintiff bears the risk that the action, or particular claims in the action, might not be maintained as a class through trial. Thus, the risks of failing to obtain class certification and failing to maintain the class through trial also weigh in favor of this settlement.[8]

---

[7]     The Second Circuit stated "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Donovan*, 754 F.2d at 1056. *See also La Rue v. DeWolff Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1024 n.4 (2008) ("[Section] 502(a)(2) encompasses appropriate claims for 'lost profits.'"). Any ambiguity or uncertainty in damages is resolved against the fiduciaries. *Donovan*, 754 F.2d at 1056. In addition, unlike the securities laws, which only protect persons who purchased stock during the class period, *see, e.g., Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 n.9 (1975), ERISA provides relief for the imprudent purchase and holding of stock by a plan during the class period. *In re Ikon Office Solutions*, Inc., 191 F.R.D. 457, 463-4 (E.D. Pa. March 13, 2000), ("Plaintiffs correctly stress the difference between a securities fraud claim and an ERISA claim" and discussing in particular the availability of "holder claims" under ERISA).

[8]     The standard for determining whether a class should be certified is less stringent when the parties seek approval of a settlement, because many of the issues that make class certification difficult are no longer present. *See In re Diet Drugs*, No. 99-20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000) ("Moreover, when taking the settlement into consideration for purposes of determining class certification, individual issues which are normally present in . . . litigation become irrelevant . . .").

### 7. Factors Eight and Nine: The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two *Grinnell* factors consider whether the settlement is within a range of reasonableness compared to a "possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463. The $2,000,000 Settlement is well within the range of reasonableness contemplated by *Grinnell* because it permits Plaintiff to avoid the tremendous risks posed by prosecution of the current appeal and if successful, the onset of merits discovery and pretrial motion practice and trial and provides for an immediate two million dollar cash settlement fund.

In evaluating the proposed settlement, the Court need only determine whether the Settlement falls within a "range of reasonableness." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (citations omitted). A court is not required to engage in a trial on the merits to determine the prospects of success. *In re Milken & Associates Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citing *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984)).

Throughout the litigation, Defendants argued that even if Plaintiff proves his claims, the losses to the Plans and its participants were limited, primarily because Defendants had little, if any, authority to act to protect the Plans' participants. Defendants also suggest that damages were limited because there is no way to establish that the Plans would not have suffered similar losses had Defendants acted to limit the Plans' investment in Wyeth Stock sooner.

Considering the present value of time and money, the probability of lengthy litigation in the absence of a settlement, the risk that the Class would not succeed in recovering a higher

15

judgment, and the range of possible recovery at trial, the Settlement is well within the range of reasonableness.  As the court aptly put it when approving one of the settlements in *Enron*: "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).  *See also Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.") (citation omitted). Accordingly, the Settlement is fair, reasonable and adequate in light of the particular circumstances of the case.

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

**A.    The Action Satisfies Rule 23**

Class certification is governed by FED. R. CIV. P. 23, regardless of whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement.  *See Amchem. Prods. v. Windsor*, 521 U.S. 591, 619-29 (1997).  In order to effectuate the proposed Settlement, Plaintiff seeks preliminary certification of the following non-opt-out Class:

> All Persons who were participants in or beneficiaries of the Plans and who held Wyeth common stock in their Plan accounts at any time between January 31, 2006 through September 29, 2008 (the "Class Period"), excluding any of the Defendants or any of the Defendants' legal representatives, heirs, predecessors, and assigns.

The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes.  *See Amchem Prods.*, 521 U.S. at 621.  In conducting this task, the court's "dominant concern" is "whether a proposed class has sufficient unity so that absent members can fairly be bound by the decisions of class representatives.  *Id.*; *see also Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1983).

Plaintiff's claims for breach of fiduciary duty under ERISA are well-suited for certification. Courts have repeatedly certified similar ERISA claims for breach of fiduciary duty for class treatment. *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y 2006) (certifying claims for breach of fiduciary duty under Rule 23(b)(1)); *Global Crossing*, 225 F.R.D. at 453 (finding Rule 23(b)(1) certification appropriate for settlement class).

Class certification for settlement purposes under FED. R. CIV. P. 23 entails satisfaction of two prerequisites. First, the party seeking certification must demonstrate that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). Second, the party seeking certification must show that the proposed class action falls within one of the types maintainable under Rule 23(b) because: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. FED. R. CIV. P. 23(b); *see also Polaroid*, 240 F.R.D. at 74; *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 163 (S.D.N.Y. 2003). Here, Plaintiff can easily satisfy the prerequisites of Rule 23(a) as well as the alternative requirements of Rule 23(b)(1).

1.      **Rule 23(a)(1) – "Numerosity"**

To satisfy the numerosity requirement, the Court must conclude that the class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). To demonstrate numerosity, "plaintiffs must show that joinder is 'impracticable,' not that it is 'impossible.'" *In re WorldCom, Inc. ERISA Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *Global Crossing*, 225 F.R.D. at 451 (finding the numerosity standard had been met in an analogous ERISA breach of fiduciary duty case). As a result, the Second Circuit has held that when a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (holding that a group of such size would make joinder unnecessarily expensive and burdensome). There should be no dispute that the proposed Class satisfies the numerosity requirement and Defendants do not contest this.

Here, Plaintiff and his proposed Claims Administrator have preliminarily examined Plan transactional data which shows that in the three Plans in issue, there are in excess of 15,000 participants who held the Wyeth Company Stock Fund inside their retirement account. Consequently, the action satisfies the numerosity requirement.

2.      **Rule 23(a)(2) – "Commonality"**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Class proposed in this action easily meets this requirement. A common nucleus of operative facts is usually sufficient to satisfy the commonality requirement. *See Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."). Here, the proposed Class satisfies the commonality requirement because all prospective Class Members share common questions of

18

law and fact, including whether Defendants breached their fiduciary duties owed to the Plans and their participants.  Courts have held that "[i]n general, the question of defendants' liability for ERISA violations is common to all class members because breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

Because these questions concern the common issues of fiduciary responsibilities owed to the Plans' participants, "[a]ll of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2)." *Von Moore v. Simpsons*, No. 96-CV-2971, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997); *see also In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ.4816 DLC, 2004 WL 2211664, at *2-3 (S.D.N.Y. Oct. 4, 2004).

### 3.     Rule 23(a)(3) – "Typicality"

The claims raised by Plaintiff are "typical" of the claims of all members of the proposed Class, as required by Rule 23(a)(3).  Typicality exists where the "claims of [the] representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *Global Crossing*, 225 F.R.D. at 452 (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000)).

Typicality is often met in putative class actions brought for breaches of fiduciary duty under ERISA. *See, e.g.*, *Polaroid*, 240 F.R.D. at 75 (finding plaintiffs' ERISA claims typical of a class because all members of the class could assert the same legal arguments to establish defendants' liability and the claims were brought for plan-wide relief); *see also Koch v. Dwyer*, No. 98 Civ. 5519(RPP), 2001 WL 289972, at *3 (S.D.N.Y. March 23, 2001) (finding typicality of claims in ERISA action alleging breach of fiduciary duties).

Plaintiff's claims are clearly typical of those of the proposed Class. The claims of Plaintiff and the Class arise from Defendants' alleged breaches of fiduciary duty and Plaintiff and the Class seek to recover based upon identical legal theories, satisfying the typicality requirement of Rule 23(a)(3). *See Robidoux,* 987 F.2d at 936-37 ("[When] the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met"); *Global Crossing*, 225 F.R.D. at 452 (finding that claims met the typicality requirement where plaintiffs' claims presented common questions of law and fact). [9]

### 4.    Rule 23(a)(4) – Adequacy of Representation

The Second Circuit employs two standards for measuring adequacy of representation. "First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another.  Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." *Polaroid*, 240 F.R.D. at 77 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Plaintiff here meets both of the Second Circuit's criteria.  First, Plaintiff's Counsel has demonstrated its capability to conduct the litigation by zealously advocating on Plaintiff's behalf since 2008.  Plaintiff's Counsel is "ready, willing and able to devote the resources necessary to

---

[9]      *See, e.g., Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130-31 (E.D.N.Y. 2003) (common conduct of ERISA fiduciaries toward all plan participants satisfied typicality requirement); *WorldCom*, 2004 WL 2211664, at *3 (rejecting defendant's argument regarding commonality, adequacy and typicality on same grounds, *i.e.*, that the "claims belonging to the class are united by, among other things, the class members' purchase of WorldCom stock and WorldCom's own relationship to each of the plans"); *see also Smith v. Aon*, 238 F.R.D. 609, 617 (N.D. Ill. 2006) ("no question" that proposed class representatives' claims were typical where they were "pursuing the same legal theory against Defendants: that Defendants breached their fiduciary duties with regard to investments of Plan assets in Aon stock during the Class Period, thereby causing the Plan as a whole to lose value").

litigate this case vigorously," *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996), and indeed has already invested substantial resources to prosecute this litigation.

Second, Plaintiff's interests are not antagonistic to those of the Class.[10]  Where the Plaintiff and Class Members all share the common goal of maximizing recovery, there is no conflict of interest between the class representative and the other Class Members.  *Drexel*, 960 F.2d at 291.[11]

Plaintiff has been harmed by the same alleged wrongdoing of Defendants as absent Class Members.  The interests of Plaintiff are united in proving Defendants' fiduciary misconduct and achieving the maximum possible recovery.  Furthermore, Plaintiff's focus is on recovering losses to the Plans and—only indirectly—to himself.  As such, Plaintiff's interests are squarely in line with those of the proposed Class.

### 5.     The Class May Be Properly Certified Under Rule 23(b)(1)

In addition to the four prerequisites of Rule 23(a), a case may proceed as a class action if Plaintiff satisfies one of the three alternative requirements of Rule 23(b).  FED. R. CIV. P. 23(b). Under Rule 23(b)(1), a class may be certified if:

> (1)     prosecuting separate actions by or against individual class members would create a risk of:

---

[10]     This prong of Rule 23(a)(4) has often been viewed as "an alternative way of stating that the representative's claims or defenses must be typical of those of the class, as required by Rule 23(a)(3), and the requirements of 23(a)(4) have frequently been considered simultaneously." *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 700 (S.D.N.Y. 1980); *see also Rueckert v. Sheet Metal Workers' Int'l Ass'n.*, 77 F.R.D. 409, 410 (S.D.N.Y. 1977) (conducting a single analysis for Rule 23(a)(3) and 23(a)(4); *Robertson v. National Basketball Ass'n*, 389 F. Supp. 867, 898 (S.D.N.Y. 1975) (same).

[11]     *See, e.g.*, *Polaroid*, 240 F.R.D. at 77 (claims in ERISA action "do not hinge on whether a particular individual chose to invest in a 401(k) plan – rather, they focus on the nature of Defendants' conduct").

> (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or
>
> (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

FED. R CIV. P. 23(b)(1).

Because allegations in an ERISA action implicate misconduct in the management of the Plans as a whole, "disparate lawsuits by individual participants would raise the specter of 'varying adjudications.'" *Polaroid*, 240 F.R.D. at 77-78. Permitting multiple actions — each seeking the same relief from Defendants on behalf of the Plans — to proceed would "potentially prejudice individual class members and would threaten to create 'incompatible standards of conduct' for the Defendants." *Id.* at 78. "These are precisely the problems Rule 23(b)(1) was intended to avoid. Indeed, 'ERISA litigation of this nature presents a paradigmatic example of a [Rule 23](b)(1) class.'" *Id.* (citing *Kolar v. Rite Aid Corp.*, No. 01-CV-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar.11, 2003)).

### *(a)     Subsection 23(b)(1)(B)*

Certifications under both Sections of Rule 23(b)(1) are common in ERISA breach of fiduciary duty cases because of the defendants' alleged "unitary treatment" of the individual members of the proposed class. *Global Crossing,* 225 F.R.D. at 453 (quoting *Ikon,* 191 F.R.D. at 466); *see also* FED R. CIV. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating certification under Rule 23(b)(1) is appropriate "in cases charging breach of trust by fiduciary to large class of beneficiaries").

By its nature, this action is a representative one. Certification under Rule 23(b)(1)(B) is appropriate here because "[a]ny adjudication with respect to individual members of the class will

as a practical matter be dispositive of the interests of the other members of the class."

*WorldCom ERISA*, 2004 WL 2211664, at *3.

### (b)     *Subsection Rule 23(b)(1)(A)*

It is not uncommon for courts to certify ERISA class actions under both subsections

23(b)(1)(A) and 23(b)(1)(B).  *See, e.g., Global Crossing*, 225 F.R.D. at 453 (noting that

certification pursuant to Rule 23(b)(1)(A) is appropriate where separate actions would prejudice

the defendants).  The representative nature of Plaintiff's ERISA claims alleging Defendants'

plan-wide fiduciary misconduct illustrates the propriety of certification under this subsection.

*See In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 303 (E.D.N.Y. 2006) (noting

that "Rule 23(b)(1)(A) certification would be appropriate . . . where the [defendant] is obliged to

treat the members of the class alike").  Defendants were bound to treat all Class Members alike;

indeed, it would be nearly impossible for Defendants to distinguish the obligations owed to each

of the Plans' participants.  Moreover, if the Court were not to certify the Class under Rule

23(b)(1)(A), the prosecution of separate actions of various plaintiffs would create risk of

inconsistent or varying adjudications with respect to individual members of the Class.

Therefore, the proposed Class should be certified under Rule 23(b)(1)(A).

### (c)     *Rule 23(g) is Satisfied*

Rule 23(g) requires the Court to examine the capabilities and resources of counsel for the

Class to determine whether they will provide adequate representation to the Class.  Here,

Plaintiff's Counsel satisfy Rule 23(g) because Plaintiff's Counsel has substantial experience in

handling class actions, other complex litigation and the type of claims that Plaintiff asserts in this

action.  Of particular relevance here, Plaintiff's Counsel has successfully litigated numerous

similar ERISA class action cases for plan participants and retirees.

Plaintiff's Counsel's exhaustive efforts in prosecuting this case, combined with their experience and in-depth knowledge of the law, satisfy Rule 23(g).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff and Plaintiff's Counsel respectfully submit that the Settlement is an excellent result for the Class in this ERISA case.  Plaintiff's Counsel recommend the settlement as fair, reasonable, and adequate, and they request that this Court: (1) preliminarily approve the Settlement Agreement; (2) conditionally certify the proposed class and appoint Plaintiff's Counsel as Class Counsel; (3) approve Plaintiffs' Notice and Notice plan; and (4) set a date for a Fairness Hearing during the week of April 8, 2013 or thereafter.

Dated: December 21, 2012

**SQUITIERI & FEARON, LLP**

By:  */s/Stephen J. Fearon, Jr.*
Stephen J. Fearon, Jr.
32 East 57th Street, 12th Floor
New York, New York 10022
Tel:  212-421-6492
Fax:  212-421-6553
Email: stephen@sfclasslaw.com

**GAINEY & McKENNA**

By:  */s/Thomas J. McKenna*
Thomas J. McKenna
440 Park Avenue South, 5th Floor
New York, New York 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmlaw2001@yahoo.com
Email: tjmckenna@gaineyandmckenna.com

***Attorneys for Plaintiff***

24

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 21, 2012, I caused the foregoing document and supporting Declaration and exhibits to be filed through the Court's Electronic Case Filing system in Master File No. 08-cv-04688 (RJS) and served a copy of those documents upon all counsel of record registered with that system.

*/s/ Noemi Escarment*
Noemi Escarment

1